case number 241440. Thank you. Thank you. Good morning, Mr. Rosen. Good morning, Your Honor. May it please the Court. Initially, the issues that we briefed and are pursuing on this appeal are the claims of retaliation and equal protection. And everything I say, this appeal from a grant of summary judgment, comes with the implicit, sometimes explicit, predicate that a trier could reasonably find the facts that I'll point to. What happened here, a trier could find, is that the defendants first escalated the discovery of a plan to smuggle marijuana via a corrupt guard into an imagined threat of armed, violent escape with a smuggled weapon and escape tool, and then punished Mr. Reynolds in violation of the department's rules and without giving him a chance to defend himself. So, I mean, so I think you're not disputing that he tried to bring in the edible marijuana products, that he had contraband. You're not disputing that it would have been within the prison official's authority to place him in high security, right? You're arguing is that they wouldn't have done so had it not been for his First Amendment speech. Well, no, high security, and you've touched on what I think was actually the fundamental, if I may say, mistake by the district judge, high security was ostensibly not punishment. It was ostensibly something that addresses the risk of future harm. And, well, one might say, gee, is that enough harm? I think if we look, you look at the list of who got put on high security. Mr. Reynolds fits if you consider the screwdriver and doesn't fit if you just talk about the marijuana conspiracy. It goes on for pages. And it's all. What about the lighter, though? What about the lighter? The lighter was hidden right in a baby powder box, and a lighter can cause significant problem. A lighter can cause significant problems and it is contraband, but it is not and no one said it was. It was a weapon. Why shouldn't we consider your his guilty plea to possession of a possible escape item and to conspiring to bring contraband into the northern facility as sufficient evidence that he committed offenses that would warrant his placement on high security status or his transfer? Our point is that the reliance on a potential escape item was just 180 degrees off. There's a screwdriver. I put a picture of it in our brief. I commend the PDF, which is in color, but the No, I saw the screwdriver, but my question is, it's one thing to, you know, say it's a debate that it's a screwdriver, but then he pleads guilty to possession of, quote, a possible escape item. Why isn't that enough? He pled guilty to the lighter and the screwdriver. But he also, as part of that, as an important corollary to that, I think he pled guilty and acknowledged that that was a possible escape item. I don't think so. I think, well, without getting into construing that language, the point is that he didn't have any choice but to plead guilty because he was he knew he's going to be found guilty because of the lighter. He knew if he pleaded not guilty, he would be found guilty and he would be given twice as much punishment. And he was not given any notice that this would be a flag for high security. I'm sorry. I'm going to ask my question again. You're just to make sure that I'm clear. I was under the impression that your argument was there are all these things that he did and he pled guilty to. But had it not been for his successful suit, he would not have received the punishment that he did. You're now clearly articulating the things he did for a whole bunch of reasons should not have warranted in the security in the placement of high security. Is that right? Or what what what is your what is your First Amendment retaliation? Are you all about the screwdriver? The screwdriver was his ticket to to high security. So because he won his lawsuit, they decided to take the screwdriver and call it something that legitimately put him in high security. Yes, seized on is the verb that I would use the screwdriver. But so so as a follow up to that, am I right that you lose? I think if the defendants can show that even if there was an improper motive in this case, which is your contention, they would have taken the same actions without without without that improper motive. In other words, you know, the combination. I think that's right. That if if it didn't make it, if their motivation didn't make a difference, then then we don't have a good case. At least we don't have a good retaliation case. We may still have another case, but this is a retaliation case. Yeah. Yeah. OK. We've got an equal protection thing anyway. The in terms of the screwdriver, it's it just jumps out at one that it was not a weapon. I'm I have the box that this a similar to what the screwdriver came in. It had to have been looked at over and over again by people tossing his cell. Did it have pills? Did it have a razor blade? But it wasn't seen as anything dangerous until we won his case. Was there any direct evidence of retaliatory motive? I think the answer is no. No one said they were retaliating. What we have with respect to retaliation is a plausible explanation on summary judgment that they did something that didn't make any sense otherwise. He was getting transferred to a new situation. He had his possessions were being taken. There was there was flux and we and these items were found, including the lighter, which may not be an escape item, but still is some cause for concern potentially. And we owe a significant, significant amount of deference to the judgments of the incarcerating individuals to maintain security in the in the new facility. And he wasn't kept. How long was he kept on in high security? A year, a year, which which is a long time. It was renewed twice and it it got off on the wrong foot. I would say I call maybe again the court's attention to the list of the people who are on high security. He would, as to repeat myself, he would fit if he had a weapon. He wouldn't fit if he didn't. And he didn't. So that's that's our view of that. And let me just quote the district judge to disagree with him. He said no trier of fact can determine the defendants did not meet their burden of showing that Mr. Reynolds would have received the same punishment, even absent the retaliatory motivation. But high security is not a punishment. High security is a status. High security is for people who will pose a future threat. And. So it has to do with future harm. So to say that he was a threat is compared to the other people on high security in particular is, it seems to me, enough of a stretch to make one look for why they did it. And to take a look, I keep coming back to this because I think it's central. The fact that they seized on something that they had no that wasn't appropriate. There was the wrong category and wrong category because it was not serious, wrong category because it's not a weapon. This is not OK. I mean, nobody got on high security for for a lighter. You can't keep a lighter, but it's not. But but in a correctional facility, my question is in a correctional facility. There are different forms of security concerns. One is a weapon, obviously. Another, for different reasons, is forms of medication and narcotics. And yet a third is forms of escape items. Would you agree with that? I missed it. Medication is medication referred to as one category. The last one or another is escape items. Right. That's that's that's the one that the list of the people on high security represent. Excessive medication. I think there are two or three other people out of 75 where there's a reference to drugs. I may be wrong with the count, but I think that's about right. And we don't really know the whole story. But the notion that. So if you had drugs, it's enough. Or if you have drugs with a lighter, it's enough. At the summary judgment stage, I would say, considering the emphasis that was placed on the screwdriver from end to end makes it a tribal. I mean, the warden, I think, referenced a totality of circumstances. But I appreciate that you're very focused on the small screwdriver. I appreciate that. So you've reserved some time for rebuttal. Mr. Rosen. Yes. Although you seem like you're very anxious to add one thing. No. Why don't you reserve? I'll get my chance. You'll get your chance. And we'll hear from from your friends on the other side. Good morning, Your Honor. May it please the court. My name is Frank Garfalo. I, along with Attorney Bill 40, represent the defendants in this matter. In granting summary judgment, the district court correctly recognized that prison officials must be afforded deference on how to address conduct by inmates that they believe poses a risk to institutional safety and order. Put simply, inmates should not be able to conspire to smuggle drugs into the prison. Right. But isn't the question whether or not disciplinary issues like the ones that he engaged in are not generally grounds for high security placement? Your Honor, I think that in this particular case, though, what we have is admitted misconduct that the plaintiff himself does not dispute. The plaintiff does not dispute that he was in a conspiracy to smuggle drugs into Connecticut's most secure prison. The plaintiff does not dispute that at or around the time that he was given that ticket, that they found dangerous instruments in his cell, including a screwdriver. Right. But again, the question is not could you, it's would you have done that had it not been for Reynolds Wong? Correct, Your Honor. And I believe, consistent with this court's precedent in Lawrence v. Actel, this is an issue of prison administration. You have an inmate that does certain activities in prison. If you let some people do it and only and don't put them in high security, but put the one that won the lawsuit in high security, we have a problem, right? Well, Your Honor, respectfully, I don't think an emphasis on what other inmates did to wind up on high security is really important because here I think you have to. It is if the claim is a First Amendment retaliation claim, right? It is. It is, Your Honor. But respectfully, I think the issue is, is whether or not they appropriately exercise their deference and judgment in determining that this undisputed misconduct warranted high security placement. OK, so under your let's pretend we know like you're disputing this, but we know they they were like there are 10 people we can put in high security. This was the guy that won a lawsuit. We're choosing not to enforce it for nine of them. This one guy we're putting in. You're sitting here telling me that the way that you would your client would escape liability from it is because they had the right to do it. Well, is that the proposition of law you're asking us to adopt? That's not what I'm asking you to adopt, Your Honor. And I think it just has to be a little bit more. Your hypothetical, I think, has to be a little bit more specific to this case. And the list that's been introduced is just a historical list. There's no evidence in this matter that there were others potentially other than Mr. Silva, who the plaintiff identified that could arguably have been on high security. And can you tell me what the difference is between high security and the special circumstances that we said were unconstitutional? Of course, Your Honor. So high security was a statutory. I want to know what the difference is, because I can feel like some of the similarities I see are that all movements are escorted or monitored. They move to a new cell every 90 days, at least two cell searches per week, no contact during social visits, work assignments with the housing unit. The only difference I could identify was a formal prohibition against more than two hours of recreation. And then in the other one, there's an informal. Are there additional differences? There are, Your Honor, and I think the biggest distinction between special circumstances and high security. High security is just a classification. Special circumstances. Tell me what's the functional difference, please. The functional difference is, Your Honor, is that high special circumstances inmate had to be secured only together in a specialized unit. And they have to stay in that unit indefinitely. Whereas high security, it's a classification that gets reviewed every six months with the capability of coming off after the inmate demonstrates that he's no longer a risk to institutional security. That's not a difference in the experience of it. It's whether or not they can come off. Right. I mean, like, are the cells different? Are the. OK, they are. They are. They are a general population inmates. They can be housed at any facility just on any particular house. They have to be in a particular housing unit on that status. Their cell does get moved, but they are general population inmates. They congregate. They can interact with every other inmate in their housing unit. They have recreation with the other inmates in their housing unit. They can work. They can you know, they have they don't have the same restrictions on their recreation. It is a functionally different status. So, again, and I think that that particular status is warranted when you have a situation here where you have an inmate that does serious misconduct. The conduct should not be overstated as to what this individual is trying to do. In particular, trying to compromise a staff member to smuggle contraband into the prison. Did you find the staff member? I'm sorry. Did you find the staff member? I'm sorry. Did you find the staff member? Yes, Your Honor. OK. Well, I should say, Your Honor, to be clear, that staff member, in connection with the investigation, they found the number of the individual that was in Mr. Reynolds' cell. He was investigated. Nothing came out of it. But the suspicion. So you're sitting here saying that he compromised a staff member that when you did the investigation determined was not compromised? No, Your Honor. What the investigation determined was that they could not prove beyond a reasonable doubt that that staff member was involved. And that is that is the basis for you putting him in high security. I don't think so, Your Honor. I'm asking. I'm not. I'm actually not. I'm trying to understand the policy of where you guys and why I should feel comfortable that he did not receive retaliatory retaliatory response for activity that, at least on a statistical basis, doesn't seem like the kind that gets you in high security. Sure, Your Honor. So Administrative Directive 9.4 lays out the criteria for what cost what could classify for high. I'm not disputing your ability to do it. I'm merely asking for you to make me comfortable that the reason you didn't enforce it or you had nothing to do with the fact that he won a lawsuit. Your Honor, the individual that placed Mr. Reynolds on high security, the acting warden at the time of Northern defendant, Washington, not a defendant in the case. There is no evidence in this record that Mr. Washington was aware of the decision at the time that he did it. And at the time he made the decision, it was purely based on the information that was gathered by intelligence offers officers at Northern. Again, those officers had no connection to the initial suit, had no involvement in it, no evidence that they had any knowledge of it. May I ask you a question? Yes, Your Honor. Just so that I understand your precise position, because you've made some statements relating to the overriding interests, as overriding a number of other competing interests. So do I understand you correctly? Let me ask you this way. So if we were to agree that a jury could find that seizing this screwdriver and characterizing it as an escape tool or an escape item was in fact retaliatory. That is, it was totally and completely because of this lawsuit. Your Honor. Is that the end of the story or is that only the beginning of the story? No, Your Honor. I don't think a jury, I think the court was correct that a jury could not make that determination. Not my question. If we were to disagree with that and say that a jury could make that determination, that the screwdriver item and the characterization of the screwdriver as an escape item, if we thought a jury could find that, is that the end of the story? I don't think so, Your Honor, because I think then you get into the analysis under Mt. Healthy as acknowledged in the Lawrence v. Actill case. And as long as there was a legitimate reason for taking the action, whether it was retaliatory or not, it's supposed to be a penalty. I'm sorry. Retaliatory animus.  If the only, if the only, only reason was the litigation, you're telling me that that's still an issue? That's still not enough for a First Amendment retaliation claim. That, sir, be careful how you answer this question. So you're asking whether or not if it was just the screwdriver, whether that would be enough. I just want to make sure I understand. If we were to disagree with you and conclude that a jury could find that seizing the screwdriver and characterizing it as a escape item, escape tool, was in retaliation for bringing this lawsuit and that was the only reason, then how could you possibly prevail? I mean, it seems to me that we would send it to a jury, correct? Your Honor, I see your point. I think, though, that you are not foreclosed, though, under Lawrence from determining that even if there was a retaliatory reason, that if there is a also proper reason, which I think is replete in the record in this. Isn't that what pretext is like pretexts? There's this reason, but the real reason was the animus. I mean, I mean, I yeah, no, I, I understand your positions. I just think that if you take a look at Lawrence versus Actel, I do think that even if there is a retaliatory reason, if there is a legitimate reason, which we believe that there is and supported by the record as to the dangers of the screwdriver, irregardless of whether or not the plaintiff agrees with that, these are prison officials and they have put there's plenty of evidence on the record as to why an inmate possessing the screwdriver is problematic. If I could. Yeah. So my understanding is that Warden Washington made the recommendation to place the individual on high security status to Mr. For a whole host of reasons, including the conspiracy, the relationship with the compromised officer, the it did mention the screwdriver twice mentioned the lighter. You know, if the screwdrivers characterization was tainted by a retaliatory motive as a question for me would be whether that renders the whole procedure on which he was placed in high security status subject to kind of jury review because it was such a powerful element or whether all of the other items that were possibly in Washington may or may not have known. About the particulars of the screwdriver and focus on other elements of the behavior pattern over time. So, you know, does it take the whole determination to which we owe deference or can we can we overlook that is what is how I'm thinking about it. Does your honor. And I'd say I think you could overlook it because there are so many other things that they point to that is problematic. The lighter the DVD that has pornography on the excessive amounts of medication and external hard drive. The same hard drive that he was discussing with his nephew just a month prior somehow found its way. The phone number for a northern correction officer. The fact that he was able to get all of these items in Connecticut's most secure facility and was on his way out to a lower level facility where you'd have more freedom and more room to potentially do other things. I think if you take away the screwdriver, all of those concerns still exist, and I still think that their actions were appropriate. Thank you. Thank you. Thank you very much. Mr. Rosen. I think I have succeeded in my interest in having the argument focus on the screwdriver. I think that the issue to pick up on your honor's question about if it's the only reason the question is whether the business with the screwdriver was not the only reason but was a reason that made a difference. Did he submit a grievance or request for an administrative remedy to northern regarding the high security placement? I believe he did. He was he was transferred fairly promptly. I mean, I guess the question is, is why? Why is he not subject to dismissal for failure to exhaust administrative remedies? Well, we have in our brief, our reply brief, a couple of ways in which we say that he did. So it's the it's the the the concerns about the disciplinary tickets, right? Is that the is that the argument for how they were put on notice of his claim? Yeah. And I think his objection, which is very long. And so it was in December of twenty twenty one that he sought the administrative remedy. Is that right? Yeah. Well, that one. And that was in response to the renewal of high security. So originally he got excuse me, got transferred. And I'm not clear, as I stand here, what it is that he said initially in response. Yeah, he he complained and I think you're I think you're right, Your Honor, that he filed the appeals when after after being transferred and after being. Maintained on high security and renewed on high security. So that would be Mr. That would be the clearest example of the students and ask you a question about the conduct. So, Mr. Garofalo, I think it's part of this colloquy moved away from the screwdriver a little bit and talked about the totality of other circumstances and conduct that spurred the this the new status and then the transfer and so on. And you're you heard that you heard him say that. And my question is about what counts as the most serious conduct and how how we assess that. Do the defendants need to show that your client committed the most serious conduct, whatever that is, or do they just need to show that he committed conduct that was serious enough to warrant this change in status? I'm afraid I need to concede that the answer would be serious enough if it were not a question of motivation and the quest of the question not being necessarily what could they have done, but why did they do what they did? And it seems to me that the evidence concerning the screwdriver supports an inference. But this goes directly. This goes directly to that colloquy, because if we look at all the other matters, then maybe that's serious enough. Well, I would say not for high security. If you look at what the criteria are and you look at what happens with the other people, medication is I'll just allow myself to mention that he got the medication. He didn't give it back. He didn't use it. You know, that's I regard that as trivial. The importation conspiracy was far from trivial, but not something that if you look across the files of the records, something that typically evokes or prompts that response from the administration and what does and we would say did is landing on the screwdriver as a pretext. And if there's a pretext, I forgive me. I would suggest that the court not try to look behind the pretext or past the pretext to see, well, what could they have done anyway? I would suggest that if there's a pretext and the court finds pretext, the question isn't not could, but would. Well, no. Actually, the question is, is it a pretext for retaliation? Yes. Because it could be a pretext for something else. But that's another. Can I ask a quick question? Who made the initial characterization of the screwdriver as an escape tool? It was in the excuse me, the initial discipline at Northern and it was. One of the defendants then, I suppose, but I don't know for sure. And the initial and the final designation for high security status was made based on the recommendation by Warden Washington to Mr. Taiga. And other individuals were involved in assessing the record that he had compiled over time and looking at the gravity of the conspiracy he'd been involved in, listening to the phone calls that he had that arranged for the marijuana to be brought in and the other elements that are detailed in the record. Is that right? Yeah, I regard, forgive me for taking too much time, I regard Mr. Taiga as not a conspirator. I think he was the recipient of information. And I think the question is, why did someone in his position respond by approving high security? And I think the answer Friar could reasonably find is because of the screwdriver, not this other stuff. It all comes back to the screwdriver. Thank you very much. Thank you.